1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10   SIXTO NAVARRETE QUINONEZ,              Civil No.    12-cv-0629-WQH (DHB)

11                          Plaintiff,      **REPORT AND**

12                                          **RECOMMENDATION:**

13            v.                            **(1) GRANTING DEFENDANTS'**
                                            **MOTION TO DISMISS [ECF No.**
14                                          **25];**

15   PIONEER MEDICAL CENTER, et al.,        **(2) DENYING PLAINTIFF'S**
                                            **MOTION FOR WRIT OF**
16                                          **MANDAMUS [ECF No. 21]; AND**

17                          Defendants.     **(3) FOR DISMISSAL OF**
                                            **DEFENDANT U.S. MARSHAL**
18                                          **MARK**

19

20                              **I.  INTRODUCTION**

21            Plaintiff Sixto Navarrete Quinonez, a federal prisoner currently incarcerated at the

22   Victorville Federal Correctional Complex ("FCC Victorville") in Adelanto, California,

23   and proceeding pro se and *in forma pauperis*, filed his initial Complaint in this case on

24   March 12, 2012.  (ECF No. 1.)  The operative complaint is now the Second Amended

25   Complaint, filed on November 1, 2012, in which Plaintiff alleges civil rights violations

26   by four named defendants pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403

27   U.S. 388 (1971).  (ECF No. 15.)

28   / / /

On March 12, 2013, Plaintiff also filed a motion for writ of mandamus in which he seeks an order compelling Defendants to refer Plaintiff to a medical specialist. (ECF No. 21.)

On April 8, 2013, Defendants Lilia Castillo, Salvador Villalon and Jacqueline Machimo, each of whom are medical personnel at FCC Victorville, filed a motion to dismiss the Second Amended Complaint on grounds that (1) Plaintiff failed to exhaust available administrative remedies; and (2) the Second Amended Complaint fails to state a claim upon which relief can be granted. (ECF No. 25.) Alternatively, Defendants Castillo, Villalon and Machimo move to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1391(e). (*Id.*)

On April 8, 2013, counsel for Defendants Castillo, Villalon and Machimo also filed a request that Plaintiff's claims against Defendant U.S. Marshal Mark be dismissed without prejudice as a result of the U.S. Marshal's Office's inability to effectuate service on Defendant Mark due to the insufficiency of facts pled against him in the Second Amended Complaint. (ECF No. 24.)

After a thorough review of the pleadings, the parties' papers, and all supporting documents, the Court hereby **RECOMMENDS** that (1) Defendants' motion to dismiss for failure to exhaust administrative remedies be **GRANTED**; (2) Defendants Castillo and Villalon's motion to dismiss for failure to state a claim be **DENIED**; (3) Defendant Machimo's motion to dismiss for failure to state a claim be **GRANTED**; (4) Defendants' motion to transfer venue to the Central District of California be **GRANTED** (only in the event the motion to dismiss is denied as to Defendants Castillo, Villalon and/or Machimo); (5) Defendants' counsel's request for dismissal of Plaintiff's claims against Defendant Mark be **GRANTED**; and (6) Plaintiff's motion for writ of mandamus be **DENIED**.

/ / /

/ / /

/ / /

## II. PLAINTIFF'S ALLEGATIONS

### A.  Underlining Hernia Surgery Complications

The allegations in Plaintiff's Second Amended Complaint initially stem from a February 2010 hernia repair surgery performed on Plaintiff by Dr. Mark Whyte at Pioneer Medical Center prior to Plaintiff's arrest and incarceration.[1] Plaintiff alleges that in the days following the surgery he experienced abnormal levels of pain and he was unable to walk. (ECF No. 15 at 3-4.) When Plaintiff ultimately returned to see Dr. Whyte to complain that his right leg was still in pain, Dr. Whyte indicated that Plaintiff's tendon/nerve was sewn or stapled and that he would need to undergo another surgery to release the entrapped nerve. (*Id.* at 5.) However, Dr. Whyte informed Plaintiff that he would need to wait six to eight months before undergoing another operation due to the effects that additional anesthesia would have on Plaintiff's heart. (*Id.*) Plaintiff was prescribed painkillers and released. (*Id.*)

### B.  Allegations Against Defendant U.S. Marshal Mark

Plaintiff alleges that Defendant Mark (last name unknown) intentionally worsened his injury on September 10, 2010 while Plaintiff was being transported into the San Diego federal courthouse for a change of plea hearing. Specifically, Plaintiff alleges that Defendant Mark was searching inmates for possible contraband or dangerous weapons when he intentionally pulled Plaintiff's right leg beyond the limited angle that his sewn tendon would allow due to the nerve entrapment. (*Id.* at 2, 9.) Plaintiff alleges that Defendant Mark did this because he believed Plaintiff was only using a walker to gain sympathy from the judge, and that he believed Plaintiff was faking his injury. (*Id.* at 9.) Plaintiff alleges that Defendant Mark's actions resulted in severe pain which caused Plaintiff to urinate and defecate. (*Id.*) Plaintiff further alleges that since this incident he has been required to use a wheelchair. (*Id.* at 10.)

---

[1] As discussed in Section III, *infra*, the Court dismissed Defendants Dr. Whyte and Pioneer Medical Center because they were not acting under color of state law. Although these claims have been dismissed, the Court briefly summarizes them to provide context for the pending claims against the federal actors.

**C.**   **Allegations Against Defendants Castillo, Villalon and Machimo**

Following the incident involving Defendant Mark, Plaintiff pleaded guilty. Plaintiff arrived at FCC Victorville on April 13, 2011, and since that time, Plaintiff alleges the prison medical staff's refusal to perform surgery to release the entrapped nerve demonstrates deliberate indifference to his serous medical needs and reckless disregard for his pain and suffering, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (*Id.* at 2, 8.)

Plaintiff alleges Defendant Castillo is his direct medical service provider and that she is responsible for screening patients and their needs. (*Id.* at 11.)  Plaintiff further alleges Defendant Castillo is aware of Plaintiff's pain and suffering but chooses to ignore his requests for an operation to release his entrapped nerve. (*Id.*)  Defendant Castillo refuses to classify Plaintiff's condition as serious, which would result in making his condition a priority and would require the Utilization Review Committee ("URC") to allocate funds for the surgery. (*Id.*)  Defendant Castillo has refused to consider Plaintiff's requests to be seen by a specialist, despite the fact that Plaintiff's condition has resulted in multiple falls.  (*Id.*)  Instead, Plaintiff has been provided increasing doses of painkillers. (*Id.*)  Defendant Castillo also refuses to accept from Plaintiff a copy of Dr. Whyte's post-surgery consultation notes indicating that Plaintiff should be scheduled for a nerve release surgery if his pain and numbness persists. (*Id.* at 7, 11.)  Rather, Dr. Castillo informed Plaintiff that Dr. Whyte would have to directly send her his consultation notes. (*Id.* at 11.)

Plaintiff alleges Defendant Villalon treated Plaintiff one month after his arrival at FCC Victorville and determined that Plaintiff was experiencing terrible pain. (*Id.* at 13.) However, Defendant Villalon only increased Plaintiff's painkillers, told Plaintiff that the problem would go away quickly and informed Plaintiff that the prison medical staff would need to verify whether Plaintiff's claim of an entrapped nerve was in fact true prior to determining whether to perform surgery. (*Id.*)  Defendant Villalon also refused to accept Dr. Whyte's consultation notes directly from Plaintiff.  (*Id.*)

Plaintiff alleges Defendant Machimo is a member of the URC and that he has approached her several times complaining about the nurse and doctor's refusal to refer him to a specialist to determine why he is experiencing pain. (*Id.*)  Defendant Machimo told Plaintiff several times that she would speak directly with his direct health provider; however, Plaintiff only encountered increased antagonism from Defendants Castillo and Villalon. (*Id.*)

### III.  PROCEDURAL HISTORY

Plaintiff filed his initial Complaint in this action on March 12, 2012.  (ECF No. 1.) The Court dismissed the Complaint for failure to pay the filing fee required by 28 U.S.C. § 1914(a) and/or failing to file a motion to proceed *in forma pauperis*.  (ECF No. 2.) Plaintiff filed a motion for leave to proceed *in forma pauperis* on June 12, 2012.  (ECF No. 5.)  On July 10, 2012, the Court granted Plaintiff's motion for leave to proceed *in forma pauperis* but dismissed Plaintiff's Complaint, with leave to amend, for failure to state a claim upon which relief can be granted.  (ECF No. 7.)

On August 16, 2012, Plaintiff filed a First Amended Complaint, which the Court subsequently dismissed for failure to state a claim upon which relief can be granted. (ECF Nos. 8, 13.)

On November 1, 2012, Plaintiff filed the operative Second Amended Complaint. (ECF No. 15.)  The Second Amended Complaint contains allegations against various defendants, including Pioneer Medical Center, the U.S. Marshal's Service, the Federal Bureau of Prisons ("BOP"), Dr. Whyte, U.S. Marshal Mark, FCC Victorville, MLP Castillo, Dr. Salvador Villalon and Machimo.  However, on January 9, 2013, the Court *sua sponte* dismissed Pioneer Medical Center and Dr. Whyte without leave to amend because neither of these defendants acted "under of color of state law" for purposes of 42 U.S.C. § 1983.  (ECF No. 16 at 3:15-4:8.)  The Court also *sua sponte* dismissed the U.S. Marshal's Service, the BOP and FCC Victorville without leave to amend because *Bivens* does not authorize actions for monetary relief against federal agencies.  (*Id.* at 4:10-5:3.)   However, the Court found that the Second Amended Complaint was

1   sufficiently pleaded as to Defendants Mark, Castillo, Villalon and Machimo to survive

2   the *sua sponte* screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b).  (*Id.* at 5:4-

3   6.)[2]  As a result, the Court directed the U.S. Marshal to effect service upon these four

4   Defendants.  (*Id.* at 5:21-6:4.)

5       On March 12, 2013, Plaintiff filed a motion for writ of mandamus requesting the

6   Court order Defendants Castillo, Villalon and Machimo to provide an outside specialist

7   to examine his nerve injury.  (ECF No. 21.)

8       On April 8, 2013, Defendants Castillo, Villalon and Machimo responded to

9   Plaintiff's Second Amended Complaint by filing a motion to dismiss or, in the

10  alternative, to transfer venue to the Central District of California.  (ECF No. 25.)  On that

11  same date, Defendants' counsel also filed a response to the Court's order requiring the

12  U.S. Marshal to effect service.  (ECF No. 24.)  Defendants' counsel requests dismissal

13  of all claims against Defendant Mark because Plaintiff did not provide sufficient

14  identifying information for the U.S. Marshal to effectuate valid service.  (*Id.*)

15      On April 19, 2013, the Court provided Plaintiff with notice of Defendants' motion

16  to dismiss pursuant to *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2012).  (ECF

17  No. 28.)  The Court also set a June 7, 2013 deadline for Plaintiff to file an opposition to

18  Defendants' motion.  (*Id.* at 2:27-3:2.)  However, Plaintiff failed to oppose or otherwise

19  respond to Defendants' motion by this deadline.  In light of Plaintiff's status as a pro se

20  prisoner, on June 27, 2013 the Court *sua sponte* extended Plaintiff's deadline to oppose

21  Defendants' motion until July 19, 2013.  (ECF No. 29.)  In that order, the Court expressly

22  warned Plaintiff that "[i]f Plaintiff does not file an opposition on or before July 19, 2013,

23  the Court must presume he has no opposition to the Court deciding the motion on the

24  
---

25      [2] Although Plaintiff's Second Amended Complaint alleges Defendants Mark, Castillo, Villalon and Machimo are liable under 42 U.S.C. § 1983, because these Defendants are federal actors the Court construed Plaintiff's civil rights claims against

26  them as arising under *Bivens*.  (ECF No. 16 at 4:10-12.)  "Actions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor § 1983 by a federal

27  actor under *Bivens*."  *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991); *see also Hartman v. Moore*, 547 U.S. 250, 254, 255 n.2 (2006) (a suit brought pursuant to *Bivens*

28  is the "federal analogue" to a § 1983 suit) (citations omitted).

1  papers currently before it." (*Id.* at 1:26-28.)  To date, Plaintiff has failed to oppose or
2  otherwise respond to Defendants' motion.

3  ## IV.  DISCUSSION

4  **A.**  **Motion to Dismiss for Failure to Exhaust Administrative Remedies**

5  **1.**  **Legal Standards**

6  *a.*  *Exhaustion of Administrative Remedies Under the PLRA*

7  Under the Prison Litigation Reform Act of 1995 (the "PLRA"), federal prisoners
8  must exhaust all available administrative remedies before bringing a *Bivens* action
9  complaining about prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought
10  with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by
11  a prisoner confined in any jail, prison, or other correctional facility until such
12  administrative remedies as are available are exhausted.").  Exhaustion is "mandatory."
13  *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citing *Booth v. Churner*, 532 U.S. 731, 739
14  (2001)); *see also Panaro v. City of N. Las Vegas*, 432 F.3d 949, 954 (9th Cir. 2005)
15  ("[F]ederal courts may not consider a prisoner's civil rights claim when a remedy was not
16  sought first in an available administrative grievance procedure."); *McKinney v. Carey*,
17  311 F.3d 1198, 1200-01 (9th Cir. 2002) (per curiam) (recognizing congressional intent
18  of "[r]equiring dismissal without prejudice when there is no pre-suit exhaustion.").

19  "The benefits of exhaustion can be realized only if the prison grievance system is
20  given a fair opportunity to consider the grievance.  The prison grievance system will not
21  have such an opportunity unless the grievant complies with the system's critical
22  procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 95 (2006).  "[T]o properly exhaust
23  administrative remedies prisoners must 'complete the administrative review process in
24  accordance with the applicable procedural rules.'" *Jones v. Bock*, 549 U.S. 199, 218
25  (2007) (quoting *Woodford*, 548 U.S. at 88).  The applicable rules "are defined not by the
26  PLRA, but by the prison grievance process itself." *Id.*  "Proper exhaustion demands
27  compliance with an agency's deadlines and other critical procedural rules because no
28  adjudicative system can function effectively without imposing some orderly structure on

the course of its proceedings." *Woodford*, 548 U.S. at 90-91; *see also Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) ("[A] prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are."); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited.").

The PLRA "requires exhaustion *before* the filing of a complaint and . . . a prisoner does not comply with this requirement by exhausting available remedies during the course of the litigation." *McKinney*, 311 F.3d at 1199 (emphasis added); *see also Vaden v. Summerhill*, 449 F.3d 1047, 1048 (9th Cir. 2006) ("[T]he PLRA requires that a prisoner exhaust administrative remedies before submitting any papers to the federal courts."); *Brown v. Valoff*, 422 F.3d 926, 929-30 (9th Cir. 2005) ("[A] prisoner may *not* proceed to federal court while exhausting administrative remedies.").

Failure to exhaust non-judicial remedies that are not jurisdictional should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment "based on the general principle that 'summary judgment is on the merits,' whereas 'dismissal of an action on the ground of failure to exhaust administrative remedies is not on the merits.'" *Wyatt*, 315 F.3d at 1119 (quoting *Stauffer Chem. Co. v. FDA*, 670 F.2d 106, 108 (9th Cir. 1982); *Heath v. Cleary,* 708 F.2d 1376, 1380 n.4 (9th Cir. 1983)).

"[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Rather, a defendant bears the burden of proving that a plaintiff failed to exhaust administrative remedies by demonstrating "that administrative remedies were available and unused." *Albino v. Baca*, 697 F.3d 1023, 1035 (9th Cir. 2012). If the defendant satisfies this burden, "the burden shifts to the plaintiff to show that the administrative remedies were unavailable." *Id.* at 1031 (citing *Hilao v. Estate of Ferdinand Marcos*, 103 F.3d 767, 778 (9th Cir. 1996); *Tuckel v. Grover*, 660 F.3d 1249,

1    1254 (9th Cir. 2011).[3]

2        In deciding a motion to dismiss for failure to exhaust administrative remedies,

3    courts may look beyond the pleadings and decide disputed issues of fact. *Ritza v. Int'l*

4    *Longshoremen's & Warehousemen's Union,* 837 F.2d 365, 369 (9th Cir. 1988) (per

5    curiam). If the district court concludes that the prisoner has not exhausted administrative

6    remedies, the proper remedy is dismissal of the claim without prejudice. *Id.* at 368 & n.3.

7            b.    Federal Bureau of Prisons Grievance Process

8        The BOP's grievance process is set forth at 28 C.F.R. § 542.13-.15.  In *Nunez,* the

9    Ninth Circuit summarized the process as follows:

10   As a first step in this process, an inmate normally must present his
     complaint informally to prison staff using a BP-8 form.  If the informal
11   complaint does not resolve the dispute, the inmate may make an
     "Administrative Remedy Request" concerning the dispute to the prison
12   Warden using a BP-9 form.  The BP-8 and BP-9 are linked.  Both forms
     involve a complaint arising out of the same incident, and both forms must
13   be submitted within 20 calendar days of the date of that incident.  28 C.F.R.
     § 542.14(a).  An extension of time is available upon a showing of valid
14   reason for delay.   Section 542.14(b) provides a non-exhaustive list of
     reasons that justify an extension of time.   Valid reasons "include . . . an
15   extended period in-transit during which the inmate was separated from
     documents needed to prepare the Request or Appeal."  *Id.*
16
     If the Warden renders an adverse decision on the BP-9, the inmate may
17   appeal to the Regional Director using a BP-10 form.  28 C.F.R. § 542.15(a).
     The BP-10 must be submitted to the Regional Director within 20 calendar
18   days of the date of the Warden's decision.  *Id.*  As with the time period for
     filing a BP-9, an extension of time is available upon a showing of a valid
19   reason.   *Id.*   Section 542.15(a) provides that "[v]alid reasons for delay
     include those situations described in § 542.14(b)."  *Id.*
20
     The inmate may appeal an adverse decision by the Regional Director to the
21   Central Office (also called the General Counsel) of the BOP using a BP-11
     form.  *Id.*  The BP-11 must be submitted to the Central Office within 30
22   calendar days from the date of the Regional Director's decision.  *Id.*  As
     with the time period for filing a BP-9 and a BP-10, an extension is available
23

24       [3] "[T]he PLRA . . . does not require exhaustion when circumstances render
     administrative remedies 'effectively unavailable.'" *Sapp v. Kimbrell,* 623 F.3d 813, 822
25   (9th Cir. 2010) (quoting *Nunez v. Duncan,* 591 F.3d 1217, 1226 (9th Cir. 2010)); *see also
     Brown,* 422 F.3d at 936 ("[A] prisoner need not press on to exhaust further levels of
26   review once he has either received all 'available' remedies at an intermediate level of
     review or been reliably informed by an administrator that no remedies are available.").
27   "[A] good-faith effort on the part of inmates [is required] to exhaust a prison's
     administrative remedies as a prerequisite to finding remedies effectively unavailable."
28   *Albino,* 697 F.3d at 1035 (citing *Sapp,* 623 F.3d at 823; *Nunez,* 591 F.3d at 1224).

1   upon the showing of a valid reason as described in § 542.14(b).  *Id.*

2   591 F.3d at 1219-20 (footnote omitted).

3   **2.   Analysis**

4          Defendants Castillo, Villalon and Machimo initially contend Plaintiff's claims

5   against them in the Second Amended Complaint should be dismissed because Plaintiff

6   failed to exhaust available administrative remedies by not completing the applicable

7   administrative appeals process.  (ECF No. 25-1 at 4:27-5:13, 9:16-10:18.)  In support of

8   their motion, Defendants rely on the declaration of Sarah Schuh, a Senior Attorney with

9   the BOP. (ECF No. 31.)  Ms. Schuh states that she has access to the BOP database that

10  maintains information on all administrative remedies sought by federal prisoners.  (*Id.*

11  at 2:10-14.)  Defendants contend that the documents pertaining to Plaintiff's efforts to

12  obtain administrative relief demonstrate that he has failed to exhaust available

13  administrative remedies.  The Court agrees.

14         Defendants have provided documents indicating that Plaintiff commenced

15  administrative proceedings on three separate occasions after arriving at FCC Victorville.

16  However, because the second and third administrative appeals, which commenced on

17  January 2, 2013 and March 13, 2013, respectively (ECF No. 31 at 3:22-5:4; ECF No. 31-

18  1 at 10-11, 18, 21), commenced after the start of this litigation, they are clearly

19  unexhausted. *See Vaden*, 449 F.3d at 1048; *Brown*, 422 F.3d at 929-30; *McKinney*, 311

20  F.3d at 1199.  Thus, the Court turns its focus to Plaintiff's first administrative appeal,

21  which commenced on June 10, 2011.  (ECF No. 31-1 at 13.)

22         Plaintiff's June 10, 2011 Request for Administrative Remedy claims that he filed

23  a BP-8 on June 2, 2011 complaining that he had been in severe pain resulting from his

24  prior surgery since his arrival at FCC Victorville, but that the prison's medical staff

25  "refuses to properly treat my medical problem." (*Id.*)  In response to Plaintiff's BP-8 he

26  received a reply from the counselor indicating that he should discuss the issue with his

27  medical provider.  (*Id.*)  Plaintiff stated in his Request for Administrative Remedy,

28  however, that his provider's refusal to discuss his medical condition was the reason for

seeking administrative relief. (*Id.*) Plaintiff contended that his severe pain and swelling in his left foot are leading to mental problems, depression and loss of appetite and sleep. (*Id.*) Plaintiff requested that he be properly treated for his medical problems. (*Id.*)

On June 30, 2011, the Warden issued a response indicating that Plaintiff arrived at FCC Victorville on April 12, 2011, and since that time he had been seen a total of ten times for his medical condition. (ECF No. 31-1 at 14.) The Warden further responded that Plaintiff had underwent a Nerve Conduction Velocity Test and Electromyography (NCV/EMG) on May 27, 2011, and that the results of these tests were negative. (*Id.*) Further medical treatment was pending results of an MRI. (*Id.*) The Warden advised Plaintiff that any further concerns should be addressed to Plaintiff's assigned Physician's Assistant in the Health Services Department, and that if Plaintiff was not satisfied with the Warden's response, he could appeal to the Western Regional Director within twenty days of the June 30, 2011 response. (*Id.*)

On July 13, 2011, Plaintiff timely responded to the Western Regional Director by filing a Regional Administrative Remedy Appeal. (*Id.* at 15.) Plaintiff reiterated that he was receiving inadequate medical care. (*Id.*)

On September 12, 2011, the Regional Director issued a response indicating, like the Warden's earlier response, that Plaintiff had been seen by a specialist on May 27, 2011. (*Id.*) The Regional Director also indicated that Plaintiff saw an outside care provider on July 15, 2011, but that the provider noted negative findings following an exam of Plaintiff's left hip. (*Id.*) Plaintiff was also seen on July 21, 2011 at which time he was informed of the normal results from his neurological exam and he was requested to have Dr. Whyte's medical records relating to Plaintiff's surgery forwarded to FCC Victorville's medical staff. (*Id.*) Based on his review of Plaintiff's medical records, the Regional Director concluded that Plaintiff had been receiving appropriate treatment and care while incarcerated at FCC Victorville, and that the institution would continue to monitor Plaintiff's condition. (*Id.*) The Regional Director advised Plaintiff that if he was not satisfied with this response, he could appeal to the BOP's Office of General Counsel

1   withing thirty days of the September 12, 2011 response.  (*Id.*)

2   The declaration of Ms. Schuh indicates that although Plaintiff's appeal to the

3   Office of General Counsel was due on November 18, 2011,[4] the appeal was not received

4   until December 7, 2011.  (ECF No. 31 at 3:3-11.)  Accordingly, the Office of General

5   Counsel rejected Plaintiff's appeal as untimely.  (*Id.*)

6   Based on the foregoing, the Court concludes that Plaintiff has failed to exhaust

7   administrative remedies with respect to his claims against Defendants Castillo, Villalon

8   and Machimo.  Indeed, two of Plaintiff's administrative appeals were not commenced

9   until after the instant litigation ensued.  Moreover, the only appeal that Plaintiff

10  commenced prior to filing this lawsuit was not properly exhausted because he did not

11  timely appeal to the BOP's Office of General Counsel.

12  Thus,  Defendants have met their burden of demonstrating "that administrative

13  remedies were available but unused." *Albino*, 697 F.3d at 1035.  Accordingly, the burden

14  now shifts to Plaintiff "to show that the administrative remedies were unavailable." *Id.*

15  at 1031 (citing *Hilao*, 103 F.3d at 778 n.5; *Tuckel*, 660 F.3d at 1254).  However, Plaintiff

16  fails to satisfy this burden.[5]

17  Absent a showing that administrative remedies were unavailable, Plaintiff's failure

18  to comply with the BOP's procedural rules, including deadlines, requires dismissal for

19  failure to exhaust administrative remedies.  *See Woodford*, 548 U.S. at 90-91 ("Proper

20

21        [4] Plaintiff's thirty-day deadline to appeal to the Office of General Counsel was

22  apparently extended until November 18, 2011 due to a prison lockdown.  (*See* ECF 31-1 at 10.)

23        [5] Despite receiving multiple extensions of his deadline to oppose Defendants'

24  motion to dismiss and introduce evidence to counter Defendants' exhaustion argument (*see* ECF Nos. 29, 32), Plaintiff failed to do so.  Plaintiff's only references to exhaustion

25  are found in his Second Amended Complaint, where he states in a conclusory manner that "they denied all 8-9-10-11 BP's" (ECF No. 15 at 15), and in his First Amended

26  Complaint, where he states that his appeal to the Regional Director was denied because he had been receiving medical attention.  (ECF No. 8 at 8.)  However, neither of these

27  references dispute the evidence submitted by Defendants, namely, that Plaintiff's appeal to the BOP's Office of General Counsel was rejected as untimely.  Moreover, Plaintiff

28  makes no argument that would allow the Court to conclude that his untimeliness was due to administrative remedies being unavailable.

exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." ); *Moore*, 517 F.3d at 725; *Kaba*, 458 F.3d at 684.

In conclusion, the Court **RECOMMENDS** Defendants Castillo, Villalon and Machimo's motion to dismiss the claims against them in the Second Amended Complaint for failure to exhaust administrative remedies be **GRANTED**.

**B.    Motion to Dismiss for Failure to State a Claim**

**1.    Legal Standards**

*a.    Rule 12(b)(6) Motion to Dismiss*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the sufficiency of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a [Rule 12(b)(6)] motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

A motion to dismiss should be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d

1337, 1340 (9th Cir. 1995)).  The Court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on motion to dismiss, court is "not bound to accept as true a legal conclusion couched as a factual allegation.").  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 570 (when plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.")).

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

       *b.*   *Standards Applicable to Pro Se Litigants in Civil Rights Actions*

"In a civil rights case where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford [the] plaintiff the benefit of any doubt."

*Karim–Panahi v. L.A. Police Dep't,* 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases."  *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir. 1992).  In giving liberal interpretation to a pro se civil rights complaint, courts may not "supply essential elements of claims that were not initially pled."  *Ivey v. Bd. of Regents of the Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."  *Id.*; *see also Jones v. Cmty. Redev. Agency,* 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).

Nevertheless, a court must give a pro se litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson,* 809 F.2d 1446, 1447 (9th Cir. 1987)).  Thus, before a pro se civil rights complaint may be dismissed, the Court must provide the plaintiff with a statement of the complaint's deficiencies.  *Karim–Panahi,* 839 F.2d at 623–24.  But where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate.  *James v. Giles,* 221 F.3d 1074, 1077 (9th Cir. 2000).

### 2.   Analysis

As discussed above, Plaintiff alleges Defendants Castillo, Villalon and Machimo deliberately delayed treatment on Plaintiff's entrapped nerve, causing him substantial and unnecessary pain.  (ECF No. 15 at 11, 13.)  In response, Defendants contend Plaintiff's Second Amended Complaint fails to state a cognizable *Bivens* claim of inadequate medical treatment.  (ECF No. 25-1 at 10:21-12:2.)

The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  This principle "establish[es] the government's obligation to provide medical care for those whom it is punishing by incarceration."  *Id.* The Supreme Court has noted that "[a]n inmate must rely on prison authorities to treat

1    his medical needs; if the authorities fail to do so, those needs will not be met." *Id.*; *see*

2    *also West v. Atkins*, 487 U.S. 42, 54-55 (1988).

3         Prison officials violate a prisoner's Eighth Amendment right to be free from cruel

4    and unusual punishment if they are deliberately indifferent to his serious medical needs.

5    *See Gamble*, 429 U.S. at 106; *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989).

6    "This is true whether the indifference is manifested by prison doctors in their response

7    to the prisoner's needs or by prison guards in intentionally denying or delaying access to

8    medical care or intentionally interfering with the treatment once prescribed. Regardless

9    of how evidenced, deliberate indifference to a prisoner's serious illness or injury states

10   a cause of action under § 1983 [or *Bivens*]." *Gamble*, 429 U.S. at 104-05 (footnotes

11   omitted). To establish deliberate indifference to serious medical needs, the Ninth Circuit

12   requires a two-step inquiry. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

13        First, the prisoner must have a serious medical need. *Id.* "A 'serious' medical

14   need exists if the failure to treat a prisoner's condition could result in further significant

15   injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d

16   1050, 1059 (9th Cir. 1992) (quoting *Gamble*, 429 U.S. at 104), *overruled on other*

17   *grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). In

18   making this determination, courts should consider whether "a reasonable doctor or patient

19   would find [the prisoner's condition] important and worthy of comment or treatment; the

20   presence of a medical condition that significantly affects an individual's daily activities;

21   or the existence of chronic and substantial pain." *Id.* at 1059-60 (citing *Wood v.*

22   *Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990); *Hunt*, 865 F.2d at 200-01).

23        Second, the prisoner must establish that prison officials exhibited deliberate

24   indifference to the serious medical need. *Jett*, 439 F.3d at 1096. This requirement "is

25   satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or

26   possible medical need and (b) harm caused by the indifference." *Id.* (citing *McGuckin*,

27   974 F.2d at 1059). The indifference to medical needs also must be substantial;

28   inadequate treatment due to malpractice, or even gross negligence, does not amount to

a constitutional violation. *Gamble*, 429 U.S. at 106; *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate indifference is a high legal standard.  A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment.") (citing *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) ("Mere medical malpractice does not constitute cruel and unusual punishment."); *Wood*, 900 F.2d at 1334 (stating that even gross negligence is insufficient to establish a constitutional violation)).

The deliberate indifference standard includes a subjective intent requirement and is not met "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind.  *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  Courts must focus on the seriousness of the prisoner's medical needs and the nature of the defendants' response to those needs.  *See McGuckin*, 974 F.2d at 1059.  Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Deliberate indifference can be established when "prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *McGuckin*, 974 F.2d at 1059.  However, a mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay or denial was harmful.  *Id.* at 1060 (quoting *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)); *Hunt*, 865 F.2d at 200 ("[D]elay in providing a prisoner with dental treatment, standing alone, does not constitute an [E]ighth [A]mendment violation.").  While the harm caused by delay need not necessarily be "substantial," *McGuckin*, 974 F.2d at 1060 & n.12, the Eighth

Amendment is violated if "delays occurred to patients with problems so severe that delays would cause significant harm and that Defendants should have known this to be the case," *Hallett*, 296 F.3d at 746, and "a finding that the inmate was seriously harmed by the defendant's action or inaction tends to provide additional support to a claim that the defendant was 'deliberately indifferent' to the prisoner's medical needs: the fact that an individual sat idly by as another human being was seriously injured despite the defendant's ability to prevent the injury is a strong indicium of callousness and deliberate indifference to the prisoner's suffering." *McGuckin*, 974 F.2d at 1060 (citing *Gamble*, 429 U.S. at 106). Further, "allegations that a prison official has ignored the instructions of a prisoner's treating physician are sufficient to state a claim for deliberate indifference." *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999).

Here, as an initial matter, the Court believes that Plaintiff has sufficiently alleged that his medical needs were "serious." Indeed, Plaintiff alleges the failure to approve surgery to release his entrapped nerve resulted in chronic and substantial pain and affected his "daily life and normal activities." (ECF No. 15 at 2, 11.) For example, Plaintiff alleges that he is unable to move around without a wheelchair, and he has fallen several times in the shower. (*Id.* at 11.) Such allegations are sufficient to plead a "serious" medical need. *See McGuckin*, 974 F.2d at 1059-60 (recognizing that "serious" medical needs exist when "the presence of a medical condition . . . significantly affects an individual's daily activities" or there exists "chronic and substantial pain."). Moreover, the fact that Dr. Whyte recognized that Plaintiff would need an additional surgery if his pain persisted further supports the Court's conclusion that Plaintiff has adequately alleged a "serious" medical need. *See id.* ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment . . . [is an example] of indications that a prisoner has a 'serious' need for medical treatment.").

Next, the Court concludes that Plaintiff has adequately alleged Defendants Castillo and Villalon were deliberately indifferent to Plaintiff's serious medical needs. However,

1    the Court concludes Plaintiff has failed to adequately allege a deliberate indifference

2    claim against Defendant Machimo.

3         As to Defendants Castillo and Villalon, Plaintiff alleges that attempted to submit

4    to them Dr. Whyte's consultation notes, which explain his condition and the need for an

5    additional surgery, but that they refused to accept the document from Plaintiff. (ECF No.

6    15 at 11, 13.) Instead, Defendants Castillo and Villalon took the position that they would

7    not accept Dr. Whyte's notes unless they were received directly from Dr. Whyte. (*Id.*)

8    Rather than authorizing the surgery that Plaintiff's private doctor recommended should

9    occur if pain persisted, Defendants Castillo and Villalon merely treated Plaintiff with

10   painkillers. (*Id.*) Based on these facts, if viewed in the light most favorable to Plaintiff,

11   Plaintiff has sufficiently alleged Defendants Castillo and Villalon exhibited deliberate

12   indifference to Plaintiff's serious medical needs. *See Wakefield*, 177 F.3d at 1165

13   ("[A]llegations that a prison official has ignored the instructions of a prisoner's treating

14   physician are sufficient to state a claim for deliberate indifference.").

15        As to Defendant Machimo, Plaintiff has not alleged any facts to support a finding

16   that she acted with a culpable state of mind, *see Wilson*, 501 U.S. at 297, nor has Plaintiff

17   alleged facts to support a finding that Defendant Machimo disregarded an excessive risk

18   to Plaintiff's health or safety. *See Farmer*, 511 U.S. at 837. Plaintiff's only allegations

19   with respect to Defendant Machimo is that she may be a member of the URC responsible

20   for allocating funds for inmate's surgeries, that Plaintiff complained to her several times

21   about the actions of Defendants Castillo and Villalon, and that Defendant Machimo

22   informed Plaintiff that she would speak directly with his health providers. (ECF No. 15

23   at 13.) However, there are no facts that suggest any delay in treatment is attributable to

24   Defendant Machimo.

25        In conclusion, the Court **RECOMMENDS** (1) Defendants Castillo and Villalon's

26   motion to dismiss for failure to state a claim be **DENIED**, and (2) Defendant Machimo's

27   motion to dismiss for failure to state a claim be **GRANTED**.

28   / / /

**C.**   **Counsel's Request for Dismissal of Defendant U.S. Marshal Mark**

     **1.**   **Legal Standards**

If a defendant is not served within 120 days of the date the complaint is filed, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." FED. R. CIV. P. 4(m).  "A prisoner proceeding pro se and in forma pauperis is entitled to rely on the United States Marshal for service of the summons and complaint, provided the plaintiff has furnished the information necessary to identify and serve the defendant." *James v. Murphy*, No. 09-4413 ABC (AJW), 2012 U.S. Dist. LEXIS 18932, at *42 (C.D. Cal. Jan. 24, 2012) (citing *Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir.1994), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Puett v. Blandford*, 912 F.2d 270, 275 (9th Cir.1990); *Sellers v. United States*, 902 F.2d 598, 602, 603 (7th Cir.1990)); *see also Pierce v. Woodford*, 416 F. App'x 660, 661 (9th Cir. 2011) (holding it is not abuse of discretion that a prisoner's failure to provide U.S. Marshal with necessary information to effectuate service is proper grounds for dismissal without prejudice); *cf. Dodson v. Rocha*, No. 07cv0869-W (RBB), 2008 U.S. Dist. LEXIS 123858, at *3-4 (S.D. Cal. Jan. 30, 2008) (finding the full name, badge number and place of employment of defendant was sufficient identifying information to establish a good cause exception to the service of process requirements).

     **2.**   **Analysis**

Plaintiff filed his Second Amended Complaint on November 1, 2012.  (ECF No. 15.)  On January 9, 2013, the Court ordered the U.S. Marshals to effect service on Defendants Mark, Castillo, Villalon and Machimo.  (ECF No. 16 at 5:21-6:4.)  In that order, the Court directed Plaintiff to complete the provided blank U.S. Marshal Form 285s for each Defendant as completely and accurately as possible.  (*Id.* at 5:26-6:1.) Additionally, the instructions provided by the Clerk of Court specifically instructed Plaintiff to complete one Form 285 for each defendant to be served.  (ECF No. 17-1 at

1.)

Notwithstanding the Court's instructions, it appears Plaintiff listed all four Defendants on a single Form 285.  (ECF No. 18.)  This error was compounded when the U.S. Attorneys' Office accepted service on behalf of all four Defendants.  (*Id.*)

Rather than properly file a motion to dismiss for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5), Defendants' counsel filed a "Response to Court Order and Notice of Service Defect."  (ECF No. 24.)  In the response, Defendants' counsel states that "despite a good faith effort to identify and locate [Defendant Mark], the [U.S. Marshal] was unable to do so to any reasonable degree of certainty based upon the insufficiency of the facts as pled.  Personal service on U.S. Marshal Mark has proven to be unfeasible and therefore, proper service of process as required by Fed. R. Civ. P. 4 has not, and cannot be, effected."  (*Id.* at 3:3-7.) Defendants' counsel therefore requests that the Court dismiss Plaintiff's lawsuit against Defendant Mark for lack of personal jurisdiction, and/or lack of sufficient process, and/or insufficient service of process.  (*Id.* at 3:8-11.)

Based on the foregoing, the Court concludes that Plaintiff's Second Amended Complaint, and the information provided on the Form 285, is insufficient to allow the U.S. Marshal to effect service on Defendant Mark.  To date, Plaintiff has not provided any further identifying information beyond a first name.[6]  Without more, Plaintiff fails to provide necessary information to permit the U.S. Marshal to effectuate service. Accordingly, the Court **RECOMMENDS** that Plaintiff's claims against Defendant Mark be **DISMISSED** without prejudice.  *See James*, 2012 U.S. Dist. LEXIS 18932, at *44-45 ("If service cannot be accomplished due to the pro se plaintiff's 'neglect' or 'fault,' such as failing to provide sufficient information to identify or locate the defendant after being put on notice, dismissal [without prejudice] is appropriate.") (citing *Walker*, 14 F.3d at

---

[6] Plaintiff's Second Amended Complaint suggests that Defendant Mark's first name might also be Marcos.  (*See* ECF No. 15 at 10.)

1421-22; *Pierce*, 416 F. A'ppx at 661).[7]

**D.   Motion to Transfer Venue**

Although this Report and Recommendation concludes that dismissal of this entire action without prejudice is appropriate in light of Plaintiff's failure to exhaust administrative remedies and failure to provide the U.S. Marshal with sufficient information to enable proper service on Defendant Mark, the Court nevertheless addresses Defendants' alternative motion to transfer venue to the Central District of California in the event the District Judge declines to dismiss this case in its entirety.

**1.   Legal Standards**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a); *see also E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994) ("Three factors are in the inherently broad discretion of the Court, allowing the Court to consider the particular facts of each case: convenience of the *parties*, convenience of the *witnesses*, and *interests of justice*.") (citations omitted).  Because a § 1404(a) transfer may only be made to a district where the action "might have been brought," the transferee court must have subject matter jurisdiction, the defendants would have been subject to personal jurisdiction in the transferee court and venue would have been proper.  *See Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).

/ / /

---

[7] The Court notes that a recent Ninth Circuit decision held that a district court abuses its discretion when it dismisses a pro se prisoner's complaint under Rule 4(m) without providing the plaintiff with notice and an opportunity to show good cause for failure to effect timely service. *See Crowley v. Bannister*, No. 12-15804, 2013 U.S. App. LEXIS 22087, at *16-21 (9th Cir. Oct. 30, 2013).  Here, Plaintiff was arguably put on notice of the defective service when Defendants' counsel filed the April 8, 2013 response (ECF No. 24), yet Plaintiff has not attempted to show good cause.  Moreover, given that Plaintiff will have an opportunity to object to this Report and Recommendation prior to any dismissal of Defendant Mark, the Court believes he will have received sufficient notice and an opportunity to show good cause in accordance with the Ninth Circuit's recent *Crowley* decision.

"A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  Such factors include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-31 (1988); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (balancing § 1404(a) factors).  The party seeking to transfer venue carries the burden of demonstrating that transfer is appropriate.  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) (citations omitted).

**2.    Analysis**

Defendants Castillo, Villalon and Machimo contend this Court should transfer venue to the Central District because "a substantial part of the events or omissions giving rise to Plaintiff's claims occurred" in that district. (ECF No. 25-1 at 12:5-7.) Defendants also contend that of all the factors relevant to a § 1404(a) transfer, Plaintiff's decision to file this action in the Southern District of California is the only factor weighing against transfer, but that Plaintiff's choice of forum is outweighed by the remaining factors. (*Id.* at 12:5-13:24.)

As an initial matter, the Court determines that Plaintiff's action could have initially been brought in the Central District pursuant to 28 U.S.C. § 1391(e), which provides, in relevant part:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority . . . may . . . be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

Here, a substantial part of the events or omissions giving rise to Plaintiff's claim occurred at FCC Victorville, which is located in the Central District. Moreover, Plaintiff himself is incarcerated in that district and no real property is involved in the action. Accordingly, this action could have been brought in the Central District.[8]

Next, the Court finds that, independent of whether Plaintiff's claims should be dismissed for any of the reasons discussed above, for the convenience of parties and witnesses, and in the interest of justice, the relevant factors compel transfer to the Central District. The only factor clearly weighing in Plaintiff's favor is Plaintiff's choice of forum. Thus, Defendants "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal*, 805 F.2d at 843. The Court believes Defendants have made that showing.

First, the majority of the parties are located in the Central District, including Plaintiff, Defendants Castillo, Villalon and Machimo. Defendant Mark is the only party located in the Southern District and, as discussed above, he has not been identified sufficiently to allow Plaintiff's claims against him to proceed.

Second, the majority of witnesses are likely located in the Central District. For example, FCC Victorville medical staff work and presumably live in the Central District. Additionally, the BOP's attorney declarant, Sarah Schuh, works in Los Angeles. (*See* ECF No. 31 at ¶ 1.) However, any potential witnesses to the incident involving Defendant Mark are likely located in the Southern District. Moreover, the private medical providers that performed Plaintiff's pre-arrest hernia surgery, including Dr. Whyte, are located in the Southern District. Although witnesses are located in both districts, on balance, the Court believes that the convenience of witnesses and the interests of justice would better be served by transfer to the Central District, particularly

---

[8] Defendants Castillo, Villalon and Machimo might reside within the Central District, although their motion does not confirm their residency. Given the relatively close proximity of FCC Victorville to Kern County and Inyo County, which are located in the Eastern District of California, the Court would be required to speculate as to their place of residence. In any event, Plaintiff's action could have been initially brought in the Central District pursuant to 28 U.S.C. § 1391(e)(B) and (C).

1   in light of the difficulty in locating Defendant Mark and the fact that the majority of

2   Plaintiff's allegations surround actions or inactions occurring at FCC Victorville.

3   Similarly, on balance, ease of access to sources of proof would be better served by

4   transfer of the action to the Central District.

5   Based on the foregoing, the Court **RECOMMENDS** that, in the event this action

6   is not dismissed in its entirety for the reasons discussed above, Defendants' motion to

7   transfer venue to the Central District of California be **GRANTED**.  That being said, if

8   the District Judge determines that Plaintiff's claims against Defendant Mark should not

9   be dismissed but that the claims against Defendants Castillo, Villalon and Machimo

10  should be dismissed for failure to exhaust and/or failure to state a claim, transfer to the

11  Central District would not be warranted.

12  **E.    Motion for Writ of Mandamus**

13       **1.    Legal Standards**

14  A plaintiff may request that a district court issue a writ of mandamus to compel an

15  officer or employee of the United States, or any agency thereof, to perform a duty owed

16  to the plaintiff.  28 U.S.C. § 1361.  However, mandamus is a drastic remedy only to be

17  used in extraordinary circumstances.  *Kerr v. U.S. Dist. Court for N. Dist. of Cal.*, 426

18  U.S. 394, 402 (1976).

19  "A writ of mandamus is appropriately issued only when (1) the plaintiff's claim

20  is 'clear and certain'; (2) the defendant official's duty to act is ministerial, and 'so plainly

21  prescribed as to be free from doubt'; and (3) no other adequate remedy is available."

22  *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994) (quoting *Fallini v. Hodel*, 783 F.2d

23  1343, 1345 (9th Cir. 1986)).  "An agency 'ministerial act' for purposes of mandamus

24  relief has been defined as a clear, non-discretionary agency obligation to take a specific

25  affirmative action, which obligation is positively commanded and 'so plainly prescribed

26  as to be free from doubt.'"  *Independence Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 508

27  (9th Cir. 1997) (quoting *Azurin v. Von Raab*, 803 F.2d 993, 995 (9th Cir. 1986); *United*

28  *States v. Walker*, 409 F.2d 477, 481 (9th Cir. 1969)).

In the prison context, defendants have a non-discretionary duty to provide medical treatment to the prison inmates under their control.  *See, e.g.*, *Gamble* 429 U.S. at 103 (holding the government has an "obligation to provide medical care for those whom it is punishing by incarceration."); *Paniagua v. Moseley,* 451 F.2d 228, 230 (10th Cir. 1971) (indicating a "total denial of medical care" would be a sufficient basis justifying mandamus).

However, a writ of mandamus has limits.  The Tenth Circuit has held that a court cannot use a writ of mandamus to order prison officials to provide more medical treatment than is required by law.  *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1235 (10th Cir. 2005) (holding that mandamus is proper to order prison to provide basic dental care proscribed by regulations, but not anything beyond such routine care); *Paniagua*, 451 F.2d at 230 (holding that mandamus is not proper when a doctor uses his discretion to prescribe medication instead of performing surgery).

**2.   Analysis**

Plaintiff's motion for writ of mandamus requests that the Court order Defendants Castillo, Villalon and Machimo to refer Plaintiff to a medical specialist to determine the origin of the excruciating pain that keeps him confined to a wheelchair.  The Court recommends denial of Plaintiff's request for several reasons.

First, the request seeks relief beyond that permitted by a writ of mandamus. Certainly, Defendants have a ministerial duty to provide Plaintiff with basic medical care. However, Plaintiff concedes Defendants have provided him such care.  In fact, he states that Defendants "are providing me minimum medical attention to comply with the policies."  (ECF No. 21 at 4.)  Further, Plaintiff has visited the prison medical staff numerous times and has been prescribed multiple medications.  (*Id.* at 2, 6-10; *see also* ECF No. 31-1 at 19.)  However, referring Plaintiff to a specialist is discretionary and goes beyond the ministerial duties of the prison medical staff.  Plaintiff desires to meet with a specialist other than "the General Surgeon that only asked me questions about my medical history."  (ECF No. 21 at 5.)  Such a decision is a prime example of the

discretion prison medical staff have in determining treatment that is outside the reach of a writ of mandamus.

Second, the proper manner in which Plaintiff should seek this relief is by way of the prison's administrative grievance procedures. However, based on the record before the Court, Plaintiff has not completed this administrative remedy. In fact, the record indicates that Plaintiff submitted a Request for Administrative Remedy on March 13, 2013 in which he requested that he be referred to a specialist to undergo an MRI to verify that he is not faking his medical condition. (ECF No. 31-1 at 21.) However, as discussed above, Plaintiff has not exhausted administrative remedies with respect to this grievance.

Third, Plaintiff's request might arguably be construed as a motion for injunctive relief. *See Fraher v. Heyne*, No. 1:10-cv-0951-LJO-MJS (PC), 2013 U.S. Dist. LEXIS 13852, at *6-7 (E.D. Cal. Jan. 30, 2013) (denial of motion for preliminary injunction requesting that prisoner be referred to a medical specialist); *Mester v. Kelso*, No. CIV S-10-2105 LKK EFB P, 2011 U.S. Dist. LEXIS 6056, at *11-12 (E.D. Cal. Jan. 21, 2011) (same).

Injunctive relief "is an extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A preliminary injunction represents the exercise of a far reaching power not to be indulged except in a case clearly warranting it." *Mester*, 2011 U.S. Dist. LEXIS 6056, at *4 (citing *Dymo Indus. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964). To be entitled to preliminary injunctive relief, a party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 7). "In cases brought by prisoners involving conditions of confinement, any preliminary injunction 'must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm.'" *Mester*, 2011 U.S. Dist. LEXIS 6056, at *5 (quoting 18 U.S.C. §

3626(a)(2)).

Here, even if the Court were to construe Plaintiff's motion for writ of mandamus as a motion for preliminary injunction, at a minimum Plaintiff cannot satisfy the first prong of the test because his failure to exhaust administrative remedies against Defendants Castillo, Villalon and Machimo and his failure to sufficiently identify Defendant Mark for purposes of effecting service mandates a finding that Plaintiff is not likely to prevail on the merits.

For the reasons set forth above, the Court **RECOMMENDS** Plaintiff's motion for writ of mandamus be **DENIED**.

## V. CONCLUSION

The Court submits this Report and Recommendation to United States District Judge William Q. Hayes pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.3. For the reasons outlined above, IT IS HEREBY RECOMMENDED that the District Judge issue an order:

1.   Approving and adopting this Report and Recommendation;

2.   **GRANTING** Defendants Castillo, Villalon and Machimo's motion to dismiss the claims against them for failure to exhaust available administrative remedies;

3.   **DENYING** Defendants Castillo and Villalon's motion to dismiss the claims against them for failure to state a claim upon which relief can be granted;

4.   **GRANTING** Defendant Machimo's motion to dismiss the claims against her for failure to state a claim upon which relief can be granted;

5.   **DISMISSING** Defendant U.S. Marshal Mark **without prejudice** for insufficient service of process pursuant to Federal Rule of Civil Procedure 4(m);

6.   **GRANTING** Defendants' motion to transfer venue to the Central District of California (only in the event the action is not dismissed in its entirety and the claims against Defendants Castillo, Villalon and/or Machimo survive);

and

7.   **DENYING** Plaintiff's motion for writ of mandamus.

IT IS FURTHER ORDERED that **no later than December 13, 2013**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be filed with the Court and served on all parties **no later than January 3, 2014**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  November 12, 2013

DAVID H. BARTICK
United States Magistrate Judge